This is Emmitt Chastain against the Industrial Commission, 4090301. Counsel, please. Good morning, Your Honor. My name is Don Woods. I'm with the Law Offices of Mark Lee. Appearing today on behalf of Mr. Emmitt Chastain, who was the claimant below in the appellate before this court. Considering what all has gone before this morning, I guess the good news is I'm not bringing you any issues over disputed facts. There's no issues over the doctoral incantations and the manner in which doctors express their opinions. This is just a pretty much plain and simple case of statutory interpretation. In particular, Section 51 of the Workers' Compensation Act, which governs awards and the manner in which that section was interpreted by this court in the case of Dyke-Miller v. the Commission. Because the facts are undisputed and the points, authorities, and the arguments are fully set forth in the briefs, I don't intend to just run through all the arguments. What I intend to do is just basically give you some factual context and then touch upon a couple of points in the Dyke-Miller case that got kind of short-stripped in my brief. By way of context, Mr. Chastain was injured while he was employed as an apprentice iron worker by R.D. Lawrence Construction Company. During his period of recovery, he completed all the training classes offered by the Iron Workers' Union, which would ordinarily have led to his becoming a journeyman iron worker. He also sat for, took, and passed the iron workers' exam on his first attempt. Unfortunately, the nature and extent of his injuries precluded him from returning to work as an iron worker. He was never able to put himself back on the board, and so he was unable to actually obtain journeyman status, although he was awarded honorary journeyman status by the Iron Workers' Union in recognition of his efforts on his behalf trying to become an iron worker. He was eventually re-employed by R.D. Lawrence as a yard man. This was at a substantially lower wage than he would have earned had he become a journeyman. He filed a claim under the Workers' Compensation Act, part of which included a claim for a Section 81 wage differential award. He would ask that this wage award be based upon the difference between his wage as a yard man and the wage of a journeyman iron worker. Now, you're not arguing that he had actually achieved journeyman iron worker status? No, sir. There is no question under the facts he did not achieve journeyman status. Would being a journeyman iron worker be his usual and customary line of employment? Had he completed it? Had he completed it would have been, but was it? No, sir. I mean, that's essentially the crux of this case. Section 81 says, if after the accidental injury has been sustained, the employee, as the results thereof, becomes partially incapacitated from pursuing his usual and customary line of employment, he shall blah, blah, blah. Right. You're exactly correct, sir. And that's the language that shows up in the company's brief, and that's the language that shows up in the commission order. But then it goes on to say that the amount he would be entitled to will be two-thirds of the difference between the average amount that he would have been able to earn in the full performance of his duties in the occupation in which he was engaged at the time of his accident. The occupation in which he was engaged at the time of his accident was apprentice, not journeyman. Well, the occupation in which he was engaged was an iron worker. His status at the time was an apprentice. And the average amount which he is earning or is able to earn in suitable employment at the time. Exactly. And that is the crux of the issue. And really, as he continued through, the argument of the company was throughout that because he was an apprentice, at the time he was injured, he was forfeited from ever proving the likelihood that he would have ever attained journeyman status. In other words, his status at the time of injury controlled. That's the company's argument that was apparently adopted by the commission in arriving at their decision because they affirmed the arbitrator's decision which basically just stapled Mr. Elwood's proposed order containing that language to his findings. The commission approved that and we think that was there, frankly, under the Dyckmiller case. And if you look at the actual findings, the commission concluded that the petitioner is not entitled to a wage differential based on the current pay of a journeyman iron worker as petitioner had not achieved journeyman status at the time of his injury. That's what they found. That certainly comports with the language of the statute. I don't believe it comports with the language of the statute as this court interpreted the statute in Dyckmiller. Because I think the court in Dyckmiller went beyond the four corners of that statute. And in fact found and told the commission that a person should be able to induce proofs that but for the injury they would likely have become an iron worker. And when we look at the Dyckmiller case, the two points that I wanted to raise that I don't think I touched on, in Dyckmiller you had a man who was injured, again, as an apprentice. The only evidence in that case that he would ever have become a journeyman were three matters. One, he put on the testimony of his boss that he was a pretty good worker and in the boss's opinion he would likely have passed the test if he had taken it. He also put on evidence that he paid dues for a while and if he paid dues for another, I think, year, maybe two years, he would have been able to take the examination. And third, he put on evidence that if he failed the evidence on his first attempt, he would be allowed subsequent attempts to take the test. Based upon those three elements of evidence, the court found that it would be wholly speculative to find that Mr. Dyckmiller would ever have become a journeyman iron worker. What the court did not say, and which I don't think any court in Illinois has ever said is that, because he was a journeyman at the time of injury, because he was an apprentice at the time of injury, he should not be allowed to attempt to prove that based upon the facts as shown to the commission, he would likely have become a journeyman. In fact, while your argument has some superficial appeal, but how do you separate that from the obvious counter-argument that now you're getting into realm of speculation? Something could also happen to preclude him from attaining that status. So can the commission base its decision on speculation? Because there's an element of speculation in your argument. Well, you're right, Judge. I don't think you can ever, and you know that. The thing that occurred to me as I was writing this brief is, I mean, I'm a fan of cartoons. And I know that the coyote is always getting hit on the head by an anvil, dropped by a mad roadrunner. And so the coyote never knows what's going to happen to it. We never know what's going to happen to us when we get up in the morning. So there's always an element of speculation. And in fact, if this court believes that the law should be that the apprentice status at the time of injury controls, it should say so. It didn't in Dyckmiller. I mean, if you look at the Dyckmiller case, the court recognized he was an apprentice, okay? But the court, in discussing that, said the following. And this is at page 73 and 74 of the official report of the appellate third. We conclude, therefore, that the commission properly determined that it would have been mere speculation to assume the claimant would have become a journeyman plumber. They then made two observations. Again, quoting, the record indicates the claimant never took the union examination. In fact, the claimant did not testify he ever intended to take the examination. Now, if Mr. Dyckmiller's status as an apprentice at the time of injury had controlled that issue, those matters would have been wholly irrelevant. They would have been relevant to nothing in the case. But instead, the court said, look, we looked at what evidence he produced. Here's what he didn't produce. And based upon the record as a whole, we find it would have been speculation to conclude he would ever have become a journeyman. Well, under those – to me, that says a person ought to be afforded the opportunity to at least put on proof that he could have, but for the injury, become a journeyman. Clearly, that did not happen in this case. In this case – So we have a situation – let's take your journeyman, Ironwood. He's got to work a certain number of hours, plus he has to take several exams. Is that correct? And exam. And exam. Well, if you have an apprentice who has completed his number of hours, but has yet to take his exam and is then injured, and subsequent to the injury, takes the exam and passes it, that's an entirely different issue than we have here. Because now it's no longer speculation as to whether he could become a journeyman ironworker. He would have completed the number of hours, and he's now passed the exam. The only thing preventing him from getting that journeyman's pay or working as a journeyman is his present injury. Judge, I couldn't agree with you more. But, under the company's – No, but, if you have an individual who has yet to complete his number of hours, even if he takes and passes his exam, it's purely speculative that he ever would have worked that number of hours. You can't prove that. That's not something he can do after his injury, because he can't work. So it is speculative in the second scenario, whereas it's not speculative in the first. So I don't think you can ever say that you can never collect journeyman pay under a wage differential, but you can't give any speculative dimension to it. Judge, all I can say is, as I understand the Commission's decision, and as I understand the company's arguments, under the second scenario that you posited, the individual would not be subject to a wage differential award. Exactly, under the second scenario. What about the first? Well, under the first, clearly not. But under the second, where he was injured as an apprentice, completed his hours, and then took the exam, but was unable to return to work, no recovery. Why not? Because he was an apprentice at the time of injury. I don't think that's what Dyke-Mueller says. I agree. No, but I think that's what the company says. But we have a fat situation here that doesn't fit that. We have a fat situation here where he hasn't completed the number of hours. Right. And it's purely speculation that he ever would. But Judge, I think we're jumping ahead. I think that, if the Commission had gotten to that point, I wouldn't be so uncomfortable. But the Commission never let us get to that point. The Commission said, we're just going to look at the fact that he is an apprentice at the time of injury. His status at the time of injury controls. He can't prove anything else. That's the problem with this case. That's the problem with the company's argument. And that's not what Dyke-Mueller says. I mean, to me, Dyke-Mueller says, you at least have the opportunity to prove. Now, you may agree with the result in this case. But I don't think you can agree with the process. I think we have the opportunity to prove facts from which the Commission could infer that a person would become a journeyman. And that's not allowed under what's happened here. Under what's happened here, they simply look at his status at the time of injury. That freezes him for all time as far as the wage differential. Whatever happens after that's immaterial, and he's stuck. And that's not what Dyke-Mueller says. And I don't want to put words in your mouth. But so is your thesis that even if we rule against you, we should change the rule? I think if you rule against us, you should explicitly state that the person's status at the time of injury controls. Or, or, or, if you can establish as a matter of fact. That's all we're asking the opportunity to do. That he would have been. Well, he can't establish as a matter of fact because you can never prove that he would have done those hours. I mean, he could have flown off a trampoline at home. Exactly. But we know, I mean, the arguments are contained in the briefs. But that hourly requirement is illusory. That hourly requirement is meaningless because it can be waived. It can be extended. It can be shortened. It has no meaning whatsoever. The hourly requirement is the best. But you can't establish that it would have been waived. It would have been shorted. Exactly. Or he would have completed. That's why it's not a requirement. But in the other direction, you can establish that once he had it, and if he passes those exams after his injury, he would be adjourned. Period. You can establish that as a matter of fact. Not if he couldn't go back on the board. No, no. That's the only thing that would stop him. His injury would have prevented him from going back on the board. Injury is the only thing to stop him. Exactly, and that's our point. Our point is, but for the injury in this case, all of the facts show this gentleman would have become adjourned. Well, then, why would you want us to hold that his status at the time of the injury controls? Don't you want to live to fight again another day? I mean, why do you want to establish a rule that undercuts your argument? Because I think it's a matter of fairness. I believe in fairness in the law. I believe in succinct opinion writing. I believe that the law should be stated for all to apply, that we shouldn't leave questions open. And if the law is that you can't prove anything that would alter your status from the time of injury... All right, so you're being magnanimous then, because obviously a bright line ruling does have appeal. It usually has appeal in many contexts. And so you're arguing then for a bright line rule. Absolutely. All right, was there another issue I wanted to ask you that's looming here? What about the fact the commission concluded that your client presented no evidence as to what level of apprenticeship he had obtained, nor was there any evidence of what the pay would have been at that level? That would have been relevant. That was an issue in Dyke-Miller, because he was asking for a pay differential based upon the wage of the apprentice, as opposed to the wage of the journeyman. Here, it's not a relevant issue, because he was asking for a wage differential between the pay of the yard man, which he was receiving after his injury, and the pay of the journeyman. So the fact that he presented no evidence... Is that a red herring, basically? Yes, it's just not material to discuss. Doesn't your position do some violation to the whole economics, the logic of the economics of the act? I mean, he had a scheduled injury, a benefit of $325,000, $324,000. What was that based upon? The wages he was earning at the time of the injury, wasn't it? Yes. Well, isn't that really his definition at that time of the injury, what he is worth as an economic man? Well, Judge, as far as doing violence to the act, I think the opposite is true. Counsel, you'll have an opportunity on rebuttal at the time of the... Counsel, please. Thank you. Brad Elword on behalf of R.D. Lawrence Construction. I guess I'm reading the wrong decision when I prepared for this argument. I'm hearing that they didn't get an opportunity to prove their case, and I look at page 6 and 7 of the Commission's decision, and the Commission addresses every element that they want to talk about as their so-called proof. I mean, they're essentially saying, well, we didn't have a chance to demonstrate that he was really working as a journeyman ironman, and that's not what this case presents. In fact, they tried very hard to present that. The problem that they have is the Commission said, we don't buy it, and they don't buy it because he didn't meet the training. They admit in their reply brief, pages 5 and 6, here all the facts show that Mr. Chastain did everything in his power that would have made him a journeyman except complete the illusory work hour requirement. Well, this record in no way supports the conclusion that that was an illusory requirement. The Union Representative Whalen testified that if we don't follow these guidelines, we can lose our certification for our program. That's pretty significant to me. The Commission considered that and said, this isn't illusory. We've got someone from the Union saying, we don't follow the rules that the Board sets up, we lose our ability to certify people, and they're in big trouble. And so, you cannot downplay the two and a half years that this man had to complete in his additional time. Whalen testified on several opportunities in his testimony that many people go through this program and for many different reasons, don't complete the time, even when they take the test. We don't know what he would have done. They can say, oh, yes, he would, yes, he would, but bottom line, as this course pointed out, it's speculative. We have no idea what this guy would have done, what other opportunities would have been presented to him, how he would have faced those additional opportunities had they arose. This was a fact question. They say, well, this is a simple legal question. I say, well, what is in dispute? What was his job at the time? The Commission here looked at the job as an apprentice, and they said, was he an apprentice? They said, no, he wasn't an apprentice. He was a journeyman for these reasons. The Commission evaluated those additional reasons and said, no, he wasn't a journeyman because while he may have taken the test, he had a significant time requirement to put in hours, and he did not match that. Well, let me ask a question. I'll ask you the same question. In this particular case, the Commission finds that it would be speculative to assume that he would have become a journeyman had he not been injured. What if it wouldn't have been speculative that he would have become a journeyman had he not been injured? Would he be entitled to a wage differential then? Or is what you're saying is it's all or nothing at all? He was an apprentice when he was injured. He only gets apprentice pay regardless of what he proved. Well, if it's not speculative, it's the fact he's proven his wage differential, then we're not here. No, that's not the question I asked you. I asked you if it is not speculative that he would have become a journeyman but for his injury, is he entitled to a wage differential based on a journeyman's pay, or is he still stuck with a wage differential based on his apprentice pay? If he proves he was a journeyman at the time. I didn't ask you that question. But that's the stance, Your Honor. No, no, answer the question I asked you. If it is not speculation that he would have become a journeyman but for his injury, is he entitled to a wage differential based on journeyman's pay, or is he stuck with a wage differential, or lack thereof, based on an apprentice pay that he was earning on the day of his injury? If he establishes based on the evidence that he was a journeyman. Okay, thank you. You're not going to answer the question? Proceed on, Your Honor. Your Honor, this case is, I think, being blown way out of proportion. It's a simple, manifest weight of the evidence case. We've cited authority after authority as to what the law is. The commission must first determine the person's occupation at the time of the injury, and then once they decide what that occupation is, then they look to see what the wage of that occupation is at the time of the hearing. It's that simple. They presented proof. They had their opportunity. They came in, and the union rep said, you met the standard on the test, but you didn't complete the time, and that's a significant factor, and that's a fact that the commission had to consider, and that's the end of the analysis. Based on the law, the facts of this case, manifest weight of the evidence, the commission's decision is clear, it's correct, and it should be affirmed. Is the system based upon what I call the concept of the economic man, and it's the status of the economic man at the time of the injury that dictates the level of compensation. Gosh, I think I'm understanding you correctly. I think that's right. The compact looks at what the person did, and what their work status or work capability is. That's why if I'm injured working at a job, and I make $180 an hour, my award's different than someone who works at Diamond Star and makes $800 an hour. We have the exact same injury, but our work status and what we are providing, our employment status, determines what the value of our injury is. I think I understood your question. If I didn't, I apologize. I guess. What was this man's occupation at the time of his injury? He was an apprentice iron worker. He was an iron worker? If you want to say generically. I mean, we've had these arguments about nurses. I mean, was she an operating room nurse? Was she a home care nurse? Was she a this, was she a that? Fact of the matter is, she was a nurse. And so now, what does she entitle to her wage differential based on? Operating room nurse? Lowest possible paid nurse you can find? What does she get? I think the thing different there is the qualifications. If I'm a registered nurse, I have a choice of employment based on my qualification as a RN. As a apprentice iron worker, I don't have the choice to go out and say, well, now I'm going to be a journeyman iron worker. I have to meet qualifications. But if we say the occupation is iron worker, and a classification within that occupation is apprentice, and another classification is journeyman, if it can be established by the injured worker that but for this injury, he would be working at a journeyman's pay, not at an apprentice pay, why isn't he entitled to a wage differential based on it? Even though he was only an apprentice at the time of the injury. Because iron workers are classified based on their levels of skills. So we're not... True to some degree. I don't think you can just generically say we have an iron worker here, whether he's a journeyman or whether he's an apprentice. There's a skill difference. There's a skill difference for a reason. And that differentiation justifies the difference in the wage. And that's why it matters in this case. Thank you. Thank you. Dr. Rebunnel? Just briefly, Roman. First of all, in response to Mr. Elwood's assertion that the commission considered all the facts we presented. I agree that all the facts we presented are contained in the order of decision. They do recite all the facts. But, you know, I like to think I'm from a place where words mean things. And when the commission writes in their holding that the petitioner is not entitled to a wage differential as petitioner has not achieved journeyman status at the time of his injury, to me that tells me they simply shunned aside all the facts, looked at his status at the time of the injury, and made their determination based on that. And that's where Mr. Elwood and I really part company. Because I don't think this is a simple manifest way case. I think this is a case about fundamental fairness. I think this is a case about whether a person should be able to show facts which would lead to the conclusion that, but for his injury, he would have become a journeyman. How is it not, though, what I keep wondering, how is it not inherently speculation? Judge, I don't think you can ever remove all speculation. But Dr. Miller doesn't say remove all speculation. He says it was mere speculation. He was wholly speculative. When you look at the factual situation of Dr. Miller, again, he presented three facts. His boss's opinion that he would probably have passed, which was dismissed as opinion testimony, the fact that he paid dues for a year and could take the test in a year, and the fact that if he took the test and failed, then he could take it again. That was the sum and substance of that work. Well, how do you know he'd ever pass the test? When somebody graduates from law school, is it your guess they're going to pass the test? In our case, they never passed the test. Our guy passed the test. He sat for it and passed for it. He took all his courses. He did everything he could that he could possibly do. But he didn't have the hours? Except for this illusory hour requirement. Illusory? How do you get around not having the hours? How can you ever get around it? Well, because we have records that not everyone had to have the hours. The hours were waived. They were extended. They were waived for some injured parties. They were extended for some parties. If a person was only supposed to take the test three times and he failed it three times, he could take it a fourth time. These are illusory. But again, those are facts that the commission should have considered. The commission adopted the arbitrator's report. And the arbitrator indicated it would be speculation to assume that Clayman would have become a journeyman ironworker had he not been injured. And an earnings loss award cannot be based on speculation as to the particular employment level of job classification which he might eventually obtain. Doesn't that indicate they considered the argument in Deitch-Miller? In Deitch-Miller? It indicates to me that the arbitrator might have. But when you look at the arbitration decision itself, you've got to, I think you have to go to language. Again, I come from a world where words mean things. And when they say his status at the time of injury controls, I believe. Well, that was in the first part of the paragraph. But that's in the last part. That's all. Thank you, Scott. And the clerk will take the matter under assignment for disposition.